LALEN C. KRISHER, TRUSTEE, PLAINTIFF-RESPONDENT, v. WILLIAM N. MURPHY AND HIS WIFE, DEFEND-ANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 8, 1951—Decided January 24, 1951.

Before Judges JACOBS, EASTWOOD and BIGELOW.

*Mr. Carl Kisselman* argued the cause for the respondent (*Mr. Henry S. Ross,* attorney).

*Mr. George Purnell* argued the cause for the appellants (*Messrs. Curry & Purnell,* attorneys).

PER CURIAM. This is an appeal by the vendors from a judgment for the specific performance of a contract for the sale of land. The contract was dated June 25, 1940, and called for the delivery of the deed and payment of the purchase money December 2, 1940. The suit was not commenced until nearly nine years later, September 22, 1949. The vendors contend that the agreement had been abandoned by the parties, and that in any event the purchaser, Krisher, is barred by laches from the remedy of specific performance. In our review of the facts, we adopt the version presented by the plaintiff, since the trial court seems to have accepted that version as true.

The premises in question consist of a dwelling house in Gloucester County. The sales price for the property, free and clear, was $2.500, of which $300 was paid on account upon the making of the agreement. The title to the premises was encumbered by judgments against the vendor William N. Murphy, aggregating more than $35,000 besides interest. On October 23, 1940, one Louis C. Joyce, a real estate agent who was then acting for the vendors, wrote the purchaser's lawyer that negotiations for releases from the judgment liens appeared to be progressing satisfactorily. On January 18, 1941, the lawyer, Mr. Friedman, wrote Joyce asking him "to advise me when you will be prepared to make settlement." In response, Joyce called on Friedman:

"He told me that he couldn't make settlement, that he was unable to make a settlement of the two judgments, and he said he was anxious to keep the agreement in force, that he was prepared to work it out in any way that he could. There was some talk with respect to the deposit, and I have a recollection that he was prepared

to let the $300 cover a certain period of rent in order to protect the purchasers in the event that he was unable to make settlement of the two judgments."

Friedman then reported to his client, Krisher, and had nothing further to do with the matter.

For some time prior to the date of the contract, Krisher had been the tenant of the premises described in the contract, paying rent at $20 a month. But instead of using the property himself, he permitted his sister-in-law to live there. Krisher testified that in March, 1941, Joyce telephoned him "that it didn't look as though he could get clear title immediately." He suggested that the $300 deposit be applied to rent arrears and that Krisher start paying rent again "until he had time to work out this cloud on the title." Krisher complied with the suggestion; the deposit was applied to the arrears and payment of rent on the old basis was resumed.

For eight years, from March, 1941, to August 13, 1949, the matter rested there. On the latter date, Joyce wrote Krisher offering the property to him for $5,000. A month earlier, the judgments had been satisfied of record. Krisher replied to Joyce's letter, asserting that the old agreement was still in force. Soon thereafter, he filed his complaint in the Superior Court.

Krisher also testified to a conversation he had with Joyce "after the war." "In a friendly way he said, 'If this thing isn't cleared up in the immediate future, I would be careful of the money you are spending on that place.'" But there is no scrap of evidence that Joyce at that time was authorized to speak for the vendors. Indeed, Krisher (who lives in Philadelphia) says, "He was representing me, and he sort of did my work down there."

Mrs. Krisher—who lived in the house—testified that before the execution of the agreement of sale, major repairs were made by the owners, but after that date all repairs were made by her at a total cost of $489, or an average of $50 or $60 a year. We see no significance in this. The rent remained at the prewar level at $20 a month. During the war landlords generally stopped painting and other repairs.

The parties, when contracting with each other, contemplated the possibility that the vendors would be unable to discharge the liens and give good title. They stipulated that in such event, "then at Buyer's option, the above payment or payments shall be returned to the Buyer, together with the reasonable expenses of examining the title and making survey, or the Buyer may prosecute any legal or equitable action to which the Buyer may be entitled."

█ Krisher contends that he was not obligated to make an election in the early months of 1941, but could defer deciding what course to pursue until the title was cleared, or perhaps until his equitable interest as vendee was cut off at the expiration of 20 years, measured from the date of the contract. We cannot agree. A fair construction of the agreement required a reasonably prompt election by the purchaser when it became apparent that the vendor could not give a title free of liens. It is unthinkable that the parties intended that, while the vendors remained bound, the buyer would have the option for nine years—or it might have been for twenty—whether to take or not to take the land.

██ Furthermore, Krisher did make an election that the money paid on account of the purchase price, the $300, should be returned to him; for when the money was applied, with his approval, to the rent arrears which he owed the appellants, it was, in legal affect, returned to him. It was no longer a part of the purchase price. This action constituted an election to rescind the agreement of sale, and the election was irrevocable. Krisher could not choose thereafter to enforce the contract by specific performance. *Blum Building Co. v. Ingersoll*, 99 *N. J. Eq.* 563 (*Ch.* 1926); affirmed, 101 *N. J. Eq.* 291 (*E. & A.* 1927).

But Krisher argues that the disposal of the $300 and the resumption of rent payments was to continue only until the encumbrances on the title should be removed; that such was his agreement with Joyce. Any agreement with respect to future rent did not touch the application of the deposit. That was intended to be absolute and final. *Cf. Kazepis v. North Jersey Holding Co.*, 111 *N. J. Eq.* 342 (*E. & A.* 1932), hold-

ing that delay added to a payment of interest constituted a binding election, even though the payment was accompanied by a letter stating it to be "without prejudice." Again, we point out that Joyce is not shown to have had any authority from the vendor to vary, or to waive, the terms of the contract, or to make a new agreement. In the absence of proof, we must find he had no power.

■ We conclude that the plaintiff Krisher elected to abandon the contract. Lastly, even if there had been no clause in the contract defining the rights of the purchaser which arose when the vendors found themselves unable to satisfy the liens; even if there had been no application of the deposit, we are satisfied that the discretionary remedy of specific performance should be denied. Nine years is far too long a time to keep alive the buyer's right to a deed. The complaint should be dismissed.

The judgment is reversed with costs.